# CASES

# SUPREME JUDICIAL COURT,

IN THE

# COUNTY OF LINCOLN,

ARGUED MAY TERM, 1848.

---

SAMUEL STEVENS, JR. *versus* LEWIS BACHELDER.

A levy of an execution on real estate not recorded within three months, will be invalid, except against the debtor and his heirs, and those having actual knowledge thereof.

The record of the conveyance or the deed, or levy on real estate, itself, left in the registry for record, was the only legal notice by registry of the conveyance of real estate, recognized by our statutes before the enactment of the provisions contained in Rev. St. c. 91, § 25, and perhaps still is. If therefore, before that statute, the deed or levy was left with the register of deeds, and he made a certificate thereon that it had been recorded, and it was then withdrawn and taken from the office by the grantee or creditor before any record thereof was actually made, such proceedings furnish no legal notice to subsequent purchasers or creditors of such conveyance.

The record of the return of the officer of the levy of an execution on real estate without his signature to the return to authenticate it, cannot be considered such a record as the statute required to make the levy effectual against subsequent purchasers.

Where the defendant pleads the general issue with a brief statement, and both are signed by his counsel, and the plaintiff's counsel makes and signs a counter brief statement, but accidentally omits to sign his name to the joinder of the general issue, this furnishes no sufficient cause for setting aside a verdict for the defendant.

TRESPASS *quare clausum.* The plaintiff claims title by virtue of a deed from John Spear to himself, dated January

28th, 1841, and recorded February 23d, 1841; and to establish title in said Spear he puts into the case the originals and also authenticated copies of the original writs, judgments, executions and officer's returns thereon, in two suits in favor of said Spear against one Samuel Stevens (senior) from which it appears that in the first suit the writ was dated August 14th, 1830, the officer's return of attachment and service the same day, judgment rendered May 12, 1831, $146,45, debt, and $11,95, cost, and execution therefor issued May 27, 1831, and the officer's return of his levy of the same on a portion of the premises, is dated June 9, 1831, and the same was recorded Sept. 6, 1831; and this tract described in this first levy as 14 1-2 acres, more or less, is appraised at $171,55, and is called *the first levy.*

It also appears that the writ in the said second suit bears date June 9, 1831, and the officer's return of attachment the same day, judgment rendered May 11th, 1833, for $111,28, and costs $32,70, from which the plaintiff remits $50,64; and execution issued May 14th, 1833, and the officer's return of a levy upon the remaining portion of the premises is dated June 15th, 1833, and the certificate thereon of Warren Rice, Register of Deeds, that the same had been "received and entered with the records for deeds for said county," is dated Sept. 12th, 1833, and the tract embraced, being 10 1-3 acres, is called the second levy; and there was evidence that Stevens, senior, the execution debtor, was in possession of the place, called "The Stevens farm," of which these premises were a part, some years before the said first attachment, and continued to reside there till subsequent to the second levy. The defendant contending that he was seized and possessed of a certain close in said Union, as particularly described by courses and distances, puts into the case, in support of that defence, the following papers, to wit: —

A deed from Gilbert Welman to said Bachelder dated Oct. 31, 1821, and recorded, Dec. 26th, 1827; also a deed from said Batchelder to Oliver Fales, dated March 2d, 1831, and recorded July 12th, 1831; also a deed from said Fales to Artemas

W. Wiley, of release and quitclaim, dated, Dec. 27th, 1838; and a deed of release and quitclaim from said Wiley to said Bachelder, dated, Feb'y 27th, 1840, and recorded March 3d, 1840. The plaintiff contending that said Bachelder sold and conveyed said farm to Samuel Stevens, senior, at the time Stevens went into the possession of the same in 1828, and long before the attachment and levies in behalf of said Spear, by deed duly delivered to Stevens, and which deed was retained *unrecorded* in his own possession, or in the hands of his friends for him, till long after both attachments and both levies and the recording of the same, and that the existence of said deed was well known to Fales at the time he received his subsequent deed from Bachelder.

Christopher Young testified, that in conversations with Bachelder he told the witness that he first gave a deed to Samuel Stevens (senior) before he gave the deed to Fales, and that afterwards he gave the deed to Fales to accommodate Stevens and took back the deed given to him, Stevens. The witness thinks he saw the deed in said Stevens' hands several years ago, and thinks, but is not certain, that he had it in his own hands.

Oliver Fales testified, that he knew of the existence of said unrecorded deed from Bachelder, at the time he took his said deed to himself, and that he held in his own hands and possession that unrecorded deed a long time, he thinks three years or more, perhaps four years, after he had received his own deed from Bachelder; and Walter Blake testified that he saw such unrecorded deed some eight or nine years ago and examined the same.

The defendant contended, that the several acts of trespass complained of were done and committed, if at all, wholly upon the 10 1-3 acre lot, or second levy, and that said second levy was void and inoperative, because it was alleged that the book of records, where the levy was recorded, would, upon production, show that the name of the officer, who made the levy, had not been recorded, though the levy itself, including all the formalities of his return, was recorded at length, and

he proposed to introduce the book of original records as evidence and the register himself as a witness, to all which the plaintiff objected, whose objections were overruled by the Court, and thereupon the register was sworn and a book of records produced and exhibited, by which it did appear that such a levy had been recorded, but the record of the officer's name omitted, and the register testified that the name of the officer was not signed to the return when it was brought to the office for record; that he had no recollection that it was not so signed except from the fact that it was not recorded; that the record was not made by himself but by another person, that it was signed by him, and was examined by him to see that it was correct after it [was made; that he had no recollection of examining it, but never let one go out of his office without examining it himself.

The original execution being in the case, the officer's return of the levy thereon bears the name of " John Copeland, Deputy Sheriff," the officer by whom the levy was made, and which purported to have been placed there at the date of the levy; and under this return of levy there is borne upon the execution the following official certificate, to wit: " Lincoln, ss. Received Sept. 12, 1833, and entered with the records for deeds for said county, vol. 152, page 295, Warren Rice, Register;" and the copy from the clerk's office, used in the case, is his authenticated copy of said original execution, the officer's return, and of the foregoing certificate of the register of deeds. Walter Blake testified, that he had conversations with said Bachelder very soon after, he could not tell the precise time, these levies had been made, respecting them, and that Bachelder was aware of their existence.

SHEPLEY J., the presiding Judge, decided, as matter of law, that the said levy was void, and without any legal effect in the case, because the officer's name does not appear of record on the book of records produced and exhibited by the register; and he accordingly restricted the trial before the jury to that portion of the premises alone embraced in the first levy.

The verdict was for the defendant; and the plaintiff filed exceptions.

*H. C. Lowell*, in his argument for the plaintiff, made these points.

First. The plaintiff having proved the due execution of his deed from John Spear, had gone far enough with the other evidence in the case, to entitle himself to recover, as against all the world, excepting such only as could establish a better title in themselves.

His title the law protects, so that none can assail it, or take advantage of any supposed errors, or clerical omissions in the record of the same, but those, who may stand in the relation of innocent purchasers, for a good and valuable consideration and without notice. *Crafts* v. *Ford*, 21 Maine R. 416; *Buck* v. *Hardy*, 6 Greenl. 164; *Allen & al.* v. *The P. S. Co.* 8 Greenl. 210.

Second. — The defendant did not stand in the relation of an innocent purchaser, without notice: — first, because the legal estate having previously vested in Stevens, senior, by his unrecorded deed from this defendant, nothing passed by the subsequent deed from the same grantor to Oliver Fales; second, because said Fales did not intend to convey any portion of the premises covered by these levies, but merely released to Wiley any possible claim he might be supposed to have in the residue of the premises, while this defendant, well knowing the state of the title, took by Wiley's release to himself, nothing in the premises, certainly nothing in the portion embraced by the levies; and third, because the deed from the defendant to Fales was fraudulent and void as against the creditors of Stevens, senior, of whom Spear was one. *Bolton* v. *Carlisle*, 2 H. Black. R. 259; *Morgan* v. *Elam*, 4 Yerger's (Tenn.) R. 375; *Farrer* v. *Farrer*, and authorities there cited, 4 N. H. R. 191; *Botsford* v. *Morehouse*, 4 Conn. R. 550; *Marshall* v. *Fiske*, 6 Mass. R. 32; Cruise's Digest, Title, Deed, c. 26, § 18, 19, 20; *Bank of Orange* v. *Fisk*, and authorities there cited, 7 Paige, 87; *Adams* v. *Cuddy*, 13 Pick. 460; *Kimball* v. *Fenner*, 12 N. H. R. 248: *Dame*

v. *Wingate*, 12 N. H. R. 291 ; and see the authorities cited under the first point.

This defendant cannot therefore call in question the validity of this levy.

Third.   The official certificate of the register of deeds on the original execution, as returned into the clerk's office, is conclusive evidence between these parties that the levy had been recorded.   *Ames* v. *Phillips*, 18 Pick. 314; *Tracy & al.* v. *Jenks*, 15 Pick. 465; *Beverly* v. *Ellis*, 1 Randol. R. 102; *Williams* v. *Birbeck*, 1 Hoffman's R. 360; *Levy* v. *Burley*, 2 Sumn. R. 355 ; *Bamford* v. *Melvin*, 7 Greenl. R. 14 ; *Dodge* v. *Farnsworth*, 19 Maine R. 278 ; *Brown* v. *Watson & al.* 19 Maine R. 452; Buller's N. P. 226; 1 Greenl. Ev. § 91 ; *Lawrence* v. *Pond*, 17 Mass. R. 434 ; *Niles* v. *Hancock & al.* 3 Metc. R. 568 ; *Stinson* v. *Snow*, 1 Fairf. R. 263; *Bott* v. *Burnell*, 9 Mass. R. 99; *Same* v. *Same*, 11 Mass. R. 166 ; *Ladd* v. *Blunt*, 4 Mass. R. 402 ; *Breckenredges* v. *Todd*, 3 Munro. 54 ; *Reed* v. *Jackson*, 1 East, 355 ; *Jones* v. *Gibbens*, 9 Vesey's R. (Sumner's Ed.) 407 ; *Wheeler* v. *Lothrop*, 16 Maine R. 20.

Fourth.   The register who had received his fees for recording the levy and had made that official certificate under his oath of office, was an incompetent witness to falsify the same, and to charge the deputy sheriff with nonfeasance in the discharge of official duty, in exculpation of himself. — First, because of disqualifying interest, and second, because the policy of the law wisely excludes him, he is estopped. *Dickson* v. *Fisher*, 1 Bl. 664; 4 Burr. 2267 ; *Leighton* v. *Leighton*, 1 Str. 210 ; 2 Evans' Pothier, (Ed of 1839,) 120 ; *Gardner* v. *Hosmer*, 6 Mass. R. 325; *Bamford* v. *Melvin*, 7 Maine R. 14; 1 Greenl. Ev. § 393, 394, 395, 396, 404. But even the whole evidence does not disprove the record and title as exhibited by the plaintiff.   He might have had another book of records.   The proof offered fails.

Fifth.   Where one party derives his title by levy, and the other by deed, their respective rights shall be determined by the same rules of construction, and the same principles of law

are alike applicable to both. An unrecorded levy is treated like an unrecorded deed. *Mc'Lellan* v. *Whitney*, 15 Mass. R. 139 ; Statutes of 1821, c. 36, § 1 ; do. c. 60 § 27 ; Statute of 1825, c. [319 ; Rev. St. c. 11, § 17, c. 94 ; § 19, 20, 21 ; *Nason* v. *Grant*, 21 Maine R. 160 ; *Mathews* v. *Demerritt*, 22 Maine R. 312.

Sixth. Were it proved then, that the name of the officer to his return was not recorded, it would be a sufficient answer to the objection, that the defendant had notice and was aware of the existence of the levy. *Curtis* v. *Mundy*, 3 Metc. R. 405 ; *Rogers* v. *Jones*, 8 N. Hamp. R. 264 ; *Jackson* v. *Terry*, 13 Johns. R. 471 ; *Adams* v. *Cuddy*, 13 Pick. 464 ; *Gorham* v. *Blazo*, 2 Greenl. 238 ; *Mc'Lellan* v. *Whitney*, 15 Mass. R. 139 ; *M'Mechan* v. *Griffing*, 3 Pick. 149 ; *Doe* v. *Flake*, 17 Maine R. 249 ; *Emerson* v. *Littlefield*, 3 Fairf. 149 ; *Pope* v. *Cutler*, 22 Maine R. 105.

It will not be pretended, that there is any proof that the officer's return of levy was not signed before the execution was returned unto the register of deeds office ; indeed the Judge was understood to proceed on the ground, that the return was duly made and signed, but that the register omitted to record the officer's name, till the execution had passed from his own unto the files of the clerk of the Court from which it had issued.

By a true construction of the deed under which the defendant claims, Bachelder did not intend to purchase, nor the grantor to convey the portion previously taken by Spear by the levies, but merely what was left.

*Ruggles*, for the defendant.

All the evidence touching the title being out, the Judge ruled, that as to the 10 1-3 acres covered by the second levy the plaintiff had shown no title to it as against subsequent purchasers without notice, and restricted the inquiry touching the trespass to the land covered by the first levy.

The only record of the second levy was one in form but not signed by any officer, nor indication of who made the writing so recorded. That surely was no notice to subse-

sequent purchasers. The recording of a deed or execution, without a signature, would be a mere nullity. A deed recorded before acknowledgment, would be no notice. *Sigourney* v. *Larned*, 10 Pick. 72; *Pitcher* v. *Barrows*, 17 Pick. 361; *Blood* v. *Blood*, 23 Pick. 80; *Heister* v. *Foster*, 2 Binney, 40.

A record is not evidence of actual, but only of legal constructive notice; and to be such it must be in conformity with the statute making it so. 1 Porter, 298.

The original record being produced, the testimony of the register, as to whether the return was signed when recorded, was unnecessary and immaterial. The record is itself the highest evidence and speaks for itself. It shows conclusively, that the return of a levy, when recorded, had no signature to it. That a signature has since been added, does not affect the record, nor help the plaintiff.

The register was not called to contradict his record, but to sustain it. His certificate on the execution, was correct when made. If the officer has since supplied the omission of his signature, it does not disprove the record.

But whether the record was right or wrong is not in this case material; for in either case it constitutes no legal notice.

The position contended for, that the deposit of the execution with a return of a levy upon it, in the clerk's office, is "conclusive evidence between these parties," cannot be sustained, even if it had been shown at what time the execution was in fact deposited in the clerk's office. That is no notice to after purchasers, because the statute has not made it so. Even registration of a deed is not notice to the world of its contents, unless made so by statute. 1 Porter, 298, before cited.

Had the return been signed by an officer, and the register omitted by mistake or design to so record it, the remedy would be against the recording officer.

"The fault or fraud of the recording officer, in the recording of a deed, concludes the rights of the parties to the deed,

as to third parties. The remedy of the parties is against the officer." *Sawyer* v. *Adams*, 8 Vern. 172.

But here was neither fault nor fraud of the recording officer. He transcribed the writing as it was at the time he did so. The record is the highest evidence, and the testimony of the register was in accordance with the record, though unnecessary. The registry of a deed is made by statute, a legal notice to all the world. The certificate on the deed or other instrument, is no notice whatever, to after purchasers. It is the record of the deed, that constitutes the notice. Office copies of the record are evidence, *prima facie*, but the record itself is better evidence.

In *Hastings* v. *Bluehill Turnpike Corporation*, 9 Pick. 80, it was decided that the certificate of a recording officer, that a deed has been duly recorded, is only *prima facie* evidence of the fact.

But at the time of the attachment, Stevens, sen'r, had no title and acquired none afterwards. The deed to Oliver Fales, was given March 2d, 1831. The attachment by Spear, was not made till June 9, 1831. It is not pretended that the deed to Fales was not *bona fide*. The testimony of Young, introduced by plaintiff, shows the transaction. Bachelder first gave a deed to Stevens, sen'r. On Stevens' selling to Fales, his deed from Bachelder not being recorded, he gave up his deed to be canceled, and procured Bachelder to give a deed directly to Fales. There is no pretence of any fraud on the part of Bachelder, nor is any shown on the part of Stevens or Fales. Fales was then an innocent purchaser, without fraud, and the title vested in him, and there was from that time nothing in Stevens to be attached. It is precisely like the case of *Holbrook* v. *Tirrell*, 9 Pick. 105 — 108. It was there held that such a purchaser was protected against a subsequent attachment of a prior existing creditor. *Commonwealth* v. *Dudley*, 10 Mass. R. 403 ; *Barrett* v. *Thorndike*, 1 Greenl. 78.

So also was Wiley an innocent purchaser, and the title vested in him by the deed of Fales to him, and by his deed to Bachelder, the title vested in him, whether he then had notice

of Spear's attachment and levy, or not.  *Trull* v. *Bigelow*, 16 Mass. R. 406 ; *Dana* v. *Newhall*, 13 Mass. R. 498 ; *Coffin* v. *Ray*, 1 Metc. 212 ; *Connecticut* v. *Bradish*, 14 Mass. R. 296 ; *Knox* v. *Silloway*, 1 Fairf. 201 ; *Boynton* v. *Rees*, 8 Pick. 329.

The opinion of the Court, was drawn up by

SHEPLEY J. — It is admitted, that the defendant became the owner of a farm by conveyance from Gilbert Wellman, on October 31, 1821.  The testimony exhibited in the case shows, that he conveyed the same to Samuel Stevens, who entered into possession thereof during the year 1828, but never caused his deed to be recorded.

The plaintiff claims title to a part of that farm, by virtue of the levy of two executions, issued on judgments, recovered by John Spear, against Samuel Stevens, and by a conveyance from Spear to himself.  His title to that part covered by the first levy is not disputed.  The second levy was made, June 15, 1833, as appears by the return of the officer, made under that date, upon the back of the execution.  The register of deeds also made upon it the following certificate : — " Lincoln, ss.  Received September 12, 1833, and entered with the records for deeds, for said county, vol. 152, page 295." It appeared from the book of records, that the execution and return had been recorded, except the name of the officer, which had been omitted in the record.

The defendant claims title, by a conveyance, made of the farm by himself to Oliver Fales, on March 2, 1831, recorded July 12, of the same year, and by one from Fales to Artemas W. Wiley, made on December 28, 1838, and by one from Wiley to himself made on February 27, 1840.  It appears from his declarations, introduced by the plaintiff, that the defendant made a conveyance of the farm to Fales, after he had conveyed it to Stevens, to accommodate Stevens, taking back from Stevens, the unrecorded deed made to him.  Fales testified, that he knew, that the unrecorded deed to Stevens existed, when he received his conveyance, and that he had it in his own possession for three or four years.

In the case of the *Commonwealth* v. *Dudley*, 10 Mass. R. 403, it was decided, that the only exception to the rule, that a previous conveyance, unrecorded, is not good' against any other person, than the grantor and his heirs, was that of a second purchase made with a knowledge of the first and with a fraudulent design to defeat it. In this case it is apparent, that the conveyance made from the defendant to Fales, was not made to defeat the previous conveyance to Stevens, for it *was* made for his accommodation. It is alleged in argument, to have been fraudulent as against the creditors of Stevens; but there is no testimony in the case, that any fraud upon creditors was designed. Such fraud cannot be inferred from the transaction itself; for the inference is unavoidable, that Stevens received the consideration for the conveyance made to accommodate him. Fales' title appears therefore to have been good against Stevens and those of his creditors, who had not obtained a title under him, before the conveyance to Fales was recorded. *Holbrook* v. *Tirrell*, 9 Pick. 105. If there could be any doubt respecting the title of Fales, it would seem, that there could be none respecting the title of Wiley, for there is no testimony presented tending to prove, that he was not an innocent purchaser, without notice of the existence of the conveyance from the defendant to Stevens. The title of the defendant, derived from Wiley, will not be impaired by his knowledge of his own conveyance to Stevens, and of the levy made upon the estate by Spear. This must be the result, unless the plaintiff can establish his title by relation to the date of the attachment made by Spear, of the estate of Stevens, on June 9, 1831, prior to the record of the conveyance from the defendant to Fales, on July 12, 1831. In such case the arrangement between Stevens and the defendant, to have the farm conveyed to Fales and the conveyance made accordingly, cannot operate to defeat any rights, which the plaintiff had already obtained. A levy, not recorded, within three months, as the statute requires, will be invalid, except against the debtor and his heirs and those having actual knowledge of it. *McLellan* v. *Whitney*, 15 Mass. R. 137.

The counsel for the plaintiff insists, that the certificate of the register of deeds made upon the execution, is conclusive evidence of the record of the levy as of that date.

The statute then in force, c. 60, § 27, required the execution with the officer's doings thereon, to be recorded in the registry of deeds, within three months. The statute c. 36, providing for the record of conveyances of real estate, required, that they should be recorded at length in the registry. There was then no statute provision making it the duty of the register of deeds to certify upon a deed or execution levied upon real estate, that it had been recorded. It might be regarded as recorded, when left in the registry for that purpose, while it remained there subject to examination, before the record was actually made. The record, or the conveyance itself, left in the registry for record, was the only legal notice of the conveyance of real estate, recognized by our statutes, before the enactment of the provision contained in the Revised Statutes, c. 91, § 25, that the register shall certify on every deed recorded by him, when it was received, and every deed shall be considered as recorded at the time, when received. Whether under this provision a record wholly imperfect, may be treated as a nullity, and the certificate be regarded as evidence of a record, after the deed has been withdrawn from the registry and retained in the private custody of the grantee, may well be doubted. The design probably was to make the certificate evidence of the time of the record, while the deed remained in the office unrecorded. But it is not now necessary to decide, what may be the true construction. To maintain such a proposition before the statutes required, that a certificate should be made, and that a book should be kept, containing the names of the grantor and grantee, the places of their residence, and the date, when the deed was left for registry, would be to establish a rule, which would deprive all persons, except those to whom it was actually known, of all legal means of obtaining knowledge of the existence of a conveyance, by which their rights might be affected, and at the same time, making it effectual against them. It would make

the registry, legal notice of a conveyance, without affording any legal right and opportunity to obtain actual knowledge of it.

A similar question was presented and decided in the case of *Hastings* v. *Blue Hill Turnpike Corporation*, 9 Pick. 80. The clerk of the corporation had certified on the back of a deed conveying shares, that it had been duly recorded, On production of the records it appeared that it had not been. The Court decided, that the record was admissible and conclusive, that the certificate was only *prima facie* evidence and that it would be no notice to subsequent purchasers, that to determine otherwise would be to defeat one of the principal objects of the record.

One question presented in the case of *Tracy* v. *Jenks*, 15 Pick. 465, was when a deed of real estate was received and recorded. The certificate indorsed upon the deed by the register and his entry upon the record corresponded in stating the time to be on May 27, 1832. There was an entry made by the register on the record. " N. B. The above was taken from this office on Monday, 28th of May, 1832, about 2 o'clock P. M. before it was recorded, and returned back to the office on Wednesday, 30th May, about 10 o'clock A. M." The Court did not consider this to be any legal evidence of the fact, and observed, that the original certificate of the register of deeds, is to be taken to be conclusive as between creditors. The decision was not, that it would be conclusive against the record stating the time differently, but conclusive against a memorandum not regarded as evidence of the fact stated in it.

In the opinion of the Court, in the case of *Ames* v. *Phelps*, 18 Pick. 314, there is found a decision in these words: — "the original mortgage is certified to have been recorded by the town clerk, who for this purpose is the regular certifying officer; the mortgagee relies upon it as a valid security. It is like the return of an officer and cannot be impeached or controlled by producing the supposed record and showing a variance." How far this decision may be founded upon the provisions of statutes in that State, or be reconcilable with the

decision made in the case of *Hastings* v. *Blue Hill Turnpike Corporation*, it is not necessary to consider; for the doctrine that a certificate made by the register on the back of a deed withdrawn from the registry and remaining where a subsequent purchaser cannot have access to it, or is not required to look for it, can be conclusive evidence of legal notice to him, affecting his rights, cannot be admitted, in the absence of any statute provision, declaring that such shall be its effect.

The record of the return of the officer without his signature to authenticate it, cannot be considered such a record as the statute required to make the levy effectual against subsequent purchasers; and there was no testimony tending to prove, . that Fales had any actual knowledge of it.

It is unnecessary to inquire, whether the testimony of the register was legally admitted. It was immaterial, and so treated by the presiding Judge, who decided, that the levy was without any legal effect in the case, because the officer's name authenticating his doings was not found in the record.

It has been contended in the argument for the plaintiff, that by a true construction of the deeds of conveyance, by virtue of which the defendant claims title, that part of the farm remaining, after both the levies had been made, would be conveyed, and no more. No such question appears to have been made at the trial, or to have been presented in the bill of exceptions; and no copies of the conveyances have been furnished, to enable the court to decide it, if it had been made.

A motion has been made to set aside the verdict, because no pleadings had been made and joined, and no issue had been legally presented to the jury. The general issue had been plead by the defendant, accompanied by a brief statement, both signed by counsel. The counsel for plaintiff, had filed and subscribed a counter brief statement, but had omitted by accident, to subscribe his name to the formal words, making the general issue complete. This is no sufficient cause for setting aside the verdict, and granting a new trial, for it is evident, that the plaintiff has suffered no injury from it, and has no just cause of complaint.                *Exceptions overruled.*